STATE OF MISSOURI, Respondent, v. JAMES HALL, Appellant.

Kansas City Court of Appeals, January 25, 1886.

1. CRIMINAL LAW—CARRYING OF CONCEALED WEAPONS—CONSTRUCTION OF STATUTE.—By section 1274, Revised Statutes, several distinct offences are created. The first is the carrying upon the person, concealed, any dangerous or deadly weapon. The general language used in defining this offence is not qualified by the subsequent language of the section as to particular weapons. The carrying, by one, concealed upon the person, of any dangerous weapon whatever, whether mentioned in the subsequent part of the statute or not, or whether of the kinds so mentioned or not, is the offence made by the statute.

2. ——— PRIVILEGE OF WITNESS AS TO CRIMINATION—CASE AD-

judged.—A witness will not be *compelled* to answer any question, the reply to which would supply evidence by which he would be convicted of a criminal offence. But where, as in this case, a witness *volunteers* his testimony in behalf of a person indicted,. concerning the transaction under investigation, he cannot decline a cross-examination on the ground that his answer would expose him to a criminal charge growing out of the same transaction. In offering to give an account of the transaction, *and giving it* he waives his right to refuse to testify concerning it. Wharton Crim. Evid. sect. 470. *Philips, P. J., and Ellison J., dissent.*

3. —— How Character of Weapon Determined—Whether Question of Law or Fact.—The question whether the weapon in proof is, or is not, a deadly or dangerous weapon, is a question of law for the court, and not a question of fact for the jury ; unless it was carried in the necessary defence of the person (as provided by section 1275, Revised Statutes), of which there is no pretense in this case ; and the circuit court in holding that " a pair of brass knucks," is a dangerous weapon, within the meaning of the statute, committed no error.

4. —— Privilege of Witness as to Character of Examination.—Although a witness, after testifying against a party charged with crime, is subject to cross-examination, it must be pertinent and relevant to the matter in chief and to the issues embraced in the pending indictment. Where the question is irrelevant and wholly collateral, and the answer would tend to criminate the witness himself in another offence, it is his constitutional right to refuse to answer. And in case of the court compelling an answer, in such a case, its duty is to deny to the state the right to use such answer, so forced against the consent of the witness, in a subsequent trial against him. *Per Philips, P. J., & Ellison, J., in separate opinion.*

Appeal from Gentry Circuit Court, Hon. Chas. H. S. Goodman, Judge.

*Reversed and remanded.*

Statement of case by the court.

This case was tried in the circuit court upon an amended information, therein filed, charging that the defendant " on the nineteenth day of October, 1883, at the said county of Gentry, did then and there unlawfully carry concealed upon and about his person a certain deadly and dangerous weapon, to-wit : a pair of metal knucks."

The defendant filed his motion to quash the amended information, "for the reason that the same did not charge the defendant with any offence known to the laws of this state, in this, that it does not charge that the defendant carried concealed upon or about his person any weapon which he is by law prohibited from carrying." Said motion was overruled by the court.

Prior to the filing of the amended information in this case the defendant and one James Henderson each stood charged by separate informations with carrying a concealed weapon, viz. : a pistol. Prior to the trial of the case at bar, the case of the *State v. Henderson* was tried. At that trial, it appears that this defendant testified as a witness, but, whether for the state or Henderson, it does not expressly appear from the bill of exceptions. The theory of the state in that case was that Henderson had taken from his pocket a pistol and handed it to this defendant, Hall. In that case this defendant testified that Henderson did not hand or give him, the said Hall, any pistol; that he, the said Hall, had no pistol; and that Henderson had no pistol to his knowledge. Having so testified, this defendant was then, in that case, asked by the state what it was that Henderson did hand or give to him. To answer which question the defendant refused, "because the answer would criminate him, and would be used against him in another case then pending against him, and that the answer might be made the foundation of a criminal prosecution against him." The court compelled the defendant to answer the question.

At the trial of the case at bar the state offered in evidence the answer thus made by the defendant at the trial of the case of the *State v. Henderson*. Against the defendants's objection the court permitted the state to introduce such evidence.

It was thus shown that the defendant, in answer to said question, had said that "Henderson did not on the occasion referred to hand him a pistol, but did hand him a pair of brass knucks." Henderson was a witness for the state at the trial of the case at bar. There was no

other evidence, however, so far as shown by the bill of exceptions, concerning the character of the "knucks," than that they were "brass knucks."

The defendant sought to have the court instruct the jury that, unless they found from the evidence that the "knucks" were a dangerous or deadly weapon, they would find the defendant not guilty. This the court refused to do, and in effect held that the "knucks" in proof were a dangerous weapon.

PATTON, CRANOR & PEERY, for the appellant.

I. The weapon described in the information, not being one mentioned in the statutes (sect. 1274, Rev. Stat., as amended by session acts, 1883, p. 76), no offence is charged, and that the intention of said statutes was to prohibit only the carrying of the weapons therein mentioned. Being a penal statute it will be strictly construed. Bish. Stat. Crimes, sects. 64, 120, 126 to 146, inclusive; *Shaw v. Clark*, 49 Mich. 384; *St. Louis v. Laughlin*, 49 Mo. 559; *Henback v. State*, 53 Ala. 523.

II. A witness cannot be compelled to answer a question, the answer to which would tend to criminate him, or could be made the foundation of a prosecution against him. And the rule is universal, that when extorted from him óver his protest, it cannot afterwards be used in evidence against him on a subsequent trial for criminal offence.. 2 Bish. Cr. Proced., sect. 803; Whart. Cr. Evid., sects. 463, 64, 665; Const. Mo. Art. 2, sect. 23; *State v. Marshall*, 36 Mo. 400; Rev. Stat., sect. 4015.

III. The court erred in the instructions given for the state, and in refusing those asked by defendant, and especially in modifying that numbered five by striking out the words :"*a dangerous and deadly weapon*," for that is a question of fact to be passed on by the jury.

No brief on file for the respondent.

HALL, J.—The court properly overruled the motion to quash the information. Section 1274, Revised Statutes, as amended in 1883 (Laws of 1883, p. 76), is as follows: "If any person shall carry concealed, upon or about his person, any deadly or dangerous weapon, or shall go into any church or place where people have assembled for religious worship, or into any school room or place where people are assembled for educational, literary or social purposes, or to any election precinct on any election day, or into any court room during the sitting of court, or into any other public assemblage of persons met for any lawful purpose, other than for militia drill or meetings, called under the militia law of this state, having upon or about his person any kind of fire arms, bowie knife, dirk, dagger, slung-shot, or other deadly weapon, or shall, in the presence of one or more persons, exhibit any such weapon in a rude, angry, or threatening manner, or shall have or carry any such weapon upon or about his person when intoxicated or under the influence of intoxicating drinks, or shall directly or indirectly sell or deliver, loan or barter to any minor any such weapon, without the consent of the parent or guardian of such minor, he shall, upon conviction, be punished by a fine of not less than twenty-five nor more," etc.

By this statute several distinct offences are created. The first offence, thus made, is the carrying by one, concealed upon or about his person, of any deadly or dangerous weapon. The general language used by the statute in defining that offence is not qualified or limited by the subsequent language of the statute as to particular weapons, because such subsequent language applies solely to the different offences created and defined by it, and not to the offence, already created and defined. The carrying by one, concealed upon or about his person, of any deadly or dangerous weapon whatever, whether mentioned in the subsequent part of the statute or

not, or whether of the kinds so mentioned or not, is the offence made by the statute. It is not expressly stated in the bill of exceptions that the defendant here was a witness in the case of the *State v. Henderson* for Henderson. Such fact is, however, clearly inferable from the record herein. And we shall assume such to be the fact.

"A witness will not be compelled to answer any question the reply to which would supply evidence by which he could be convicted of a criminal offence." Wharton on Crim. Evid., sect. 463.

But in the case of the *State v. Henderson*, the defendant here, volunteered his testimony, in behalf of Henderson, concerning the transaction under investigation. Having voluntarily, as a witness for Henderson, given an account of that transaction, a transaction by reason of which he stood then charged, by a separate information, with the same offence as that for which Henderson was on trial, he could not decline a cross-examination on the ground that it would expose him to a criminality, growing out of that same transaction. He had volunteered an account of the transaction, by reason of which Henderson and he both stood separately charged, and he was subject to a full and complete cross-examination as to his account of said transaction. By giving an account of said transaction the defendant waived his right to refuse to . testify concerning it. Wharton on Crim. Evid., sect. 470, and cases cited.

The charge against the defendant is that of carrying concealed upon his person a certain deadly and dangerous weapon, to-wit, a pair of metal knucks. The charge is of carrying the weapon concealed upon his person. The question whether the weapon in proof was or was not a deadly or dangerous weapon could, therefore, in no way have depended upon the manner in which it was used, or the intent with which it was carried, unless it was carried in the necessary defence of his person, as. provided by section 1275, Revised Statutes, of which there is no pretense in this case ; but the question neces-

sarily depended upon the character alone of the weapon. In this case, therefore, the question whether the "brass knucks" in proof were or were not a deadly or dangerous weapon was a question of law for the court, and not a question of fact for the jury. Bishop on Statutory Crimes, section 320, and cases cited ; 1 Bishop on Criminal Law, section 198.

The record contains no further description of the "knucks" in proof than that they were "a pair of brass knucks." In holding that "a pair of brass knucks" is a dangerous weapon within the meaning of our statute the court committed no error.

The first instruction given for the state limited the commission of the offence to any time since July 1, 1883, instead of a year prior to the filing of the amended information, to-wit, twelfth day of November, 1883. It was, of course, error to instruct the jury that they might find the defendant guilty of an offence committed between the filing of the amended information and the trial. The instruction given was open to that construction. The error, under the facts of the case, was, however, immaterial. The evidence related wholly to one offence, committed in October 1883. The error in the instruction, therefore, did the defendant no harm.

The second instruction asked by the defendant was properly refused by the court. By that instruction the jury were told to find the defendant not guilty if they had a reasonable doubt of the concealment of the weapon upon the defendant's person. The defendant was entitled to an instruction relative to the consequences of a reasonable doubt as to his guilt on the whole evidence in the case, but the defendant had "no right to single out each material fact necessary to be found, and ask the court to direct the jury that, if they have a reasonable doubt as to the existence of such fact, they must acquit." The instruction given for the state properly submitted the question of the concealment of the weapon to the jury, and also the effect of a reasonable doubt of the defendant's guilt on the whole evidence.

In my opinion the case was fairly tried and the judgment should be affirmed. But in the opinion of the other judges, the court erred in admitting the evidence of the statement forced from defendant, against his objection and protest, in the trial of the case of the *State v. Henderson*, and for that reason the judgment ought to be reversed and the cause remanded. The views of the other judges upon this point are expressed in their separate opinion.

In accordance with their opinion it is ordered that the judgment be reversed and the cause remanded.

### SEPARATE OPINION.

PHILIPS, P. J.—I dissent from so much of the foregoing opinion as holds that the court, under the circumstances, could first extort from the defendant an admission of his guilt, and then have this admission employed against him on an indictment or information founded on this admission. While it may be conceded that, after testifying in the case against Henderson, he was subject to cross-examination in detail, yet such cross-examination must be pertinent and relevant to the matter in chief, and to the issues embraced within the pending indictment. Henderson was on trial for illegally carrying a pistol. The witness, defendant here, testified that he saw no pistol on Henderson, that Henderson handed him no pistol, and that he had no pistol. He was then asked as to what he did have. What he had was something else, not a pistol. The answer that he had brass knucks did not tend to prove the issue on trial. It was irrelevant, and wholly collateral, and as such the witness could not have been contradicted as to the statement. To hold that because he had voluntarily testified as to the issue, whether Henderson had a pistol, would authorize the court to compel him to admit that he himself had another weapon, the having of which would subject him to prosecution, is not only unjust to the witness, but its effect is mischievous

in the administration of criminal justice, It would tend to deny to the prisoner on trial for one offence, the benefit of the witness' testimony, if the witness could not state the facts about the matter on trial without incurring the hazard of being badgered into an admission of another distinct offence committed by him against the criminal law of the state. The witness foresaw that his answer, while not relevant to the case on trial, would tend to criminate himself in another offence, and it was his constitutional right to refuse to answer. And if the action of the court in compelling him to answer could be justified on the ground that the question was proper on its face, and the court could not foresee that it would criminate the witness, surely the least the court could have done, to preserve the constitutional privilege of the witness, would have been to deny to the state the right to use such answer, so forced against the consent of the witness, in a subsequent trial against him. Ellison, J., concurs in this dissent.